UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
At Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ROY WALSH,

    Defendant.

Case No. 1:10-Cr-001

## MOTION FOR COMPASSIONATE RELEASE

Defendant Roy Walsh, through undersigned counsel, hereby moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to time served. As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons.

The growing coronavirus pandemic is an extraordinary and compelling circumstance, especially when combined with Mr. Walsh's health condition of Diabetes, which is verified in his Presentence Report. The coronavirus and the disease it causes are currently present and dangerous in the prison facility in which Mr. Walsh is confined.

**A.**     **Statutory Framework for Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A)(i)**

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

    (1) in any case--

        (A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that**--

    (i) **extraordinary and compelling reasons warrant such a reduction**; . .

\*\*\*\*\*

**and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission**.

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Thus, the statutory requirements for sentence reduction are first, that a defendant exhaust his administrative remedies. Next, that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

**B.    Relevant Facts and Procedural History**

Mr. Walsh is 49 years old and suffers from diabetes. The PSR writer in his case was able to confirm these conditions with medical records. Additionally, because Mr. Walsh is on the BOP's list of at-risk Elkton inmates (see Exhibit 2, PageID# 530), it has already been determined that Mr. Walsh's medical conditions place him in grave danger if he is left in the Elkton facility.

Based on charges stemming from February 19, 2008, Mr. Walsh pled guilty to transportation of child pornography in interstate commerce. He was sentenced to serve 200 months of incarceration. The BOP reports that his release date is June 18, 2024. Thus, as of August 18, 2020, he has served 62.2% of his full term sentence and 73% of his statutory term (sentence including good time). Mr. Walsh merits release because of his serious medical condition, and the danger he faces should he contract COVID-19.

Upon his release, he plans to live in Lenoir City, Tennessee, at the residence with his father and mother. Mr. Walsh has prior experience in fast food service and over seven years of experience with FCI food service. He also has call center experience. He would seek employment in these areas.

**C.     Mr. Walsh has exhausted administrative remedies pursuant to 18 U.S.C. § (c)(I)(A)(i).**

On May 21, 2020, Mr. Walsh requested compassionate release from the warden of FCI Elkton. *See* Exhibit 1. On May 27, 2020, he received a denial from the warden, stating that he did not fit the criteria for release. *See* Exhibit 1. Several months have passed since the denial. Thus, Mr. Walsh has unequivocally met the requirements in the statute of exhaustion.

**D.     BOP Precautions Have Not Been Effective in Protecting Inmates from COVID-19.**

COVID-19 has infected almost 22 million people worldwide, leading to approximately 775,000 deaths. *Coronavirus COVID-19 Global Cases*, Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, https://coronavirus.jhu.edu/map.html (updating regularly) (last accessed August 18, 2020).

A number of judges have found the BOP's response to the COVID-19 pandemic to be inadequate. *See United States v. Hammond,* 2020 WL 1891980, at *9 (D.D.C. Apr. 16, 2020) (responding to the government's argument that "BOP is prepared to deal with pandemics such as the coronavirus" by noting the hundreds of positive cases and sixteen inmate deaths that resulted "[d]espite the precautions taken by BOP; *United States v. Atkinson,* 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (noting the "obvious shortcomings" in BOP's Action Plan and expressing dissatisfaction with BOP's response to the defendant's application for compassionate release). "It is unknowable whether BOP detainees or inmates have COVID-19 until they are tested, and BOP

has not conducted many or any such tests because, like the rest of the country, BOP has very few or no actual Covid-19 test packets." Order at 5, *United States v. Caddo*, No. 3:18-cr-08341-JJT (D. Ariz. Mar. 23, 2020).

Mr. Walsh suffers from diabetes. The CDC has made clear that those with certain serious health concerns—including chronic lung disease, moderate to severe asthma, compromised immune systems, severe obesity, diabetes, renal failure, and liver disease—are also especially vulnerable to and at higher risk for serious complications from COVID-19, including death.[1]

As of May 1, 2020, 70% of all inmates the BOP had tested for COVID-19 were positive.[2] At that time, only 2,700 of the 146,000 BOP inmates in the country had been tested, indicating that the numbers of inmates with COVID-19 was much higher than what had been reported.[3] By June 16, 2020, one out of three tested federal inmates were positive for coronavirus.[4] At the time BOP administered around 24,000 tests in July, the results continued to rise, reflecting a much higher infection rate in the BOP than in the general population, which can be observed in the following illustrations:



---

[1] See https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html.
[2] "70% of inmates tested have COVID-19: Bureau of Prisons" ABC News (May 1, 2020) at https://abcnews.go.com/US/70-inmates-tested-covid-19-bureau-prisons/story?id=70454527.
[3] Id.
[4] https://abcnews.go.com/Politics/tested-federal-inmates-positive-coronavirus/story?id=71275461

COVID-19 Rate of Infection for Various Populations

| Location | Cases | Population | Infections/ 1,000 People | Infection Rate as Percent of Population |
|---|---|---|---|---|
| BOP Imprisoned Population | 8,215[5] | 143,656[6] | 57.19 | 5.7185% |
| United States | 3,341,838 | 329,947,014[7] | 10.13 | 1.0128% |
| China | 85,117[8] | 1,394,015,977[9] | 0.06 | 0.0061% |
| Italy | 243,230[10] | 62,402,659[11] | 3.90 | 0.3898% |

|  | BOP has an infection rate X times higher |
|---|---|
| Compared to the United States | 5.65 |
| Compared to China | 936.56 |
| Compared to Italy | 14.67 |

---

[5] Includes the number of BOP inmates who have tested positive for COVID-19, the number of BOP inmates who have recovered, and the number of BOP inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).

[6] Includes the number of federal inmates in BOP-managed institutions, the number of federal inmates in community-based facilities, and the number of federal inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis.

[7] Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html

[8] Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html

[9] Numbers obtained on 7/13/2020 at 4:11pm from https://www.census.gov/popclock/

[10] Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html

[11] Numbers obtained on 7/13/2020 at 4:11pm from https://www.census.gov/popclock/



By the end of June, 8 out of 10 of the coronavirus clusters were in jails and prisons.[12] In the beginning of August, about 75% of inmates at FCI Seagoville tested positive.[13] "Nationally, more than 10,000 federal inmates and 1,300 BOP employees have tested positive for coronavirus, while 111 inmates and one staffer have died."[14]

**D.      National Decisions**

Multiple courts have found that the threat of COVID-19 presents "extraordinary and compelling reasons" for compassionate release. *See United States*, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[J]ust last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); *United States v. Atkinson*, 2020 WL

---

[12] https://www.politico.com/news/magazine/2020/06/25/criminal-justice-prison-conditions-coronavirus-in-prisons-338022
[13] https://dfw.cbslocal.com/2020/08/08/north-texas-federal-prison-about-75-percent-inmates-tested-positive-covid-19/
[14] Id.

1904585, at *3 (D. Nev. Apr. 17, 2020) ("The presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means" to include COVID-19 vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission); *U.S. v. Esparza*, 2020 WL 1696084, at * (D. Idaho Apr. 7, 2020) (same); *see also* Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), *United States v. Hird*, Case No. 2:13-cr-39-TJS, Dkt. No. 650 (E.D. Pa. May 19, 2020) (government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'"); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting First Step Act release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __ F. Supp. 3d __ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the

unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Perez*, No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020) (granting compassionate release where "[t]he benefits of keeping [Perez] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"); *United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020) (granting release after finding risk factors for COVID-19 constitute extraordinary and compelling reason and noting that prisons are "tinderboxes for infectious disease"); *United States v. Williams*, No. 3:04-cr-95-MCR-CJK, Dkt. No. 91 (Apr. 1, 2020) (compassionate release in light of severe risk posed to defendant by COVID-19); *United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) (compassionate release grant).

Mr. Walsh suffers from **diabetes** which constitutes an extraordinary and compelling factor when combined with the threat of COVID-19. *United States v. Doshi*, No. 2:13-cr-20349-AJT-LJM-1, 2020 WL 2556794 (E.D. Mich. May 20, 2020); *United States v. Agomuoh*, No. 5:16-cr-20196-JEL-RSW-1, 2020 WL 2526113 (E.D. Mich. May 18, 2020); *United States v. Cotinola*, No. 1:13-cr-03890-MV-1, 2020 WL 2526717 (D. N.M. May 18, 2020); *United States v. Sholler*, No. 17-CR-00181-SI-1, 2020 WL 2512416 (N.D. Cal. May 15, 2020); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095 (E.D. Mich. May 15, 2020); *United States v. Ennis*, No. 3:02-cr-01430-PRM-1, 2020 WL 2513109 (W.D. Tex. May 14, 2020); *United States v. Mattingley*, No. 6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez,* No. 1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Barber*, No. 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Rivernider*, No. 3:10-cr-00222-RNC, 2020 WL 2393959 (D. Conn. May 12, 2020); *United States v. Hunt*, No. 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich.

May 12, 2020); *United States v. Ramirez*, No. 1:17-cr-10328-WGY, 2020 WL 2402858 (D. Mass. May 12, 2020); *United States v. Al-Jumail*, No. 2:12-cr-20272-DPH-LJM-3, 2020 WL 2395224 (E.D. Mich. May 12, 2020); *United States v. Simpson*, No. 3:11-cr-00832-SI-3, 2020 WL 2323055 (N.D. Cal. May 11, 2020); *United States v. Reddy*, No. 2:13-cr-20358-MFL-LJM-1, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Amarrah*, No. 5:17-cr-20464-JEL-EAS-1, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Quintero*, No. 6:08-cr-06007-DGL-1, 2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Howard*, No. 4:15-cr-00018-BR-2, 2020 WL 2200855 (E.D. N.C. May 6, 2020); *United States v. Pabon*, No. 2:17-cr-00165-AB-1, 2020 WL 2112265 (E.D. Penn. May 4, 2020); *United States v. Lacy*, No. 3:15-cr-30038-SEM-TSH-1, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Ardila*, No. 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D. Conn. May 1, 2020); *United States v. Pinkerton*, No. 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill. Apr. 30, 2020); *United States v. Saad*, No. 16-20197, 2020 WL 2251808 (E.D. Mich. May 5, 2020); *United States v. Lucas*, No. 1:15-cr-00143-LJV-HKS-13, 2020 WL 2059735 (W.D.N.Y. Apr. 29, 2020); *United States v. Bertrand*, No. 3:00-cr-00012-LC-1, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020); *United States v. Musumeci*, No. 1:07-cr-00402-RMB-1, Dkt. No. 58 (S.D. N.Y. Apr. 28, 2020); *United States v. Sanchez*, No. 1:95-cr-00421-MGC-1, Dkt. No. 290 (S.D. Fla. Apr. 27, 2020); *United States v. Dillard*, No. 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27, 2020); *United States v. Coles*, No. 2:00-cr-20051-SEM-TSH-1, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020); *United States v. Tillman*, No. 1:07-cr-00197-PLM-1, 2020 WL 1950835 (W.D. Mich. Apr. 23, 2020); *United States v. Logan*, No. 1:12-cr-00307-LEK-1, Dkt. No. 140 (N.D. N.Y. Apr. 22, 2020); *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809 (W.D.N.Y. Apr. 22, 2020); *United States v. Suarez*, No. 1:18-cr-20175-MGC-1, Dkt. No. 180 (S.D. Fla. Apr. 20, 2020); *United States v.*

*Samy*, No. 2:16-cr-20610-AJT-DRG-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Burrill*, No. 17-CR-00491-RS-2, 2e (N.D. Cal. Apr. 10, 2020); *United States v. Trent*, No. 3:16-cr-00178-CRB-1, 2020 WL 1812242 (N.D. Cal. Apr. 9, 2020); *United States v. Hansen*, No. 1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020); *United States v. Winckler*, No. 2:13-cr-00318-CB-1, 2020 WL 1666652 (W.D. Penn. Apr. 3, 2020); *United States v. Zukerman*, No. 1:16-cr-00194-AT-1, 2020 WL 1659880 (S.D. N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-00179-JBA-1, 2020 WL 1613943 (D. Conn. Apr. 2, 2020); *United States v. Resnick*, No. 1:12-cr-00152-CM-3, 2020 WL 1651508 (S.D. N.Y. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331 (E.D. Penn. Apr. 1, 2020); *United States v. Muniz*, No. 4:09-cr-00199-1, 2020 WL 1540325 (S.D. Tex. Mar. 31, 2020); *United States v. Harpine*, No. 6:91-cr-60156-MC-1, Dkt. No. 221 (D. Or. Mar. 27, 2020); *United States v. Champagne*, No. 4:97-CR-089, 2020 WL 3472911, at *5 (D.N.D. June 25, 2020)("He has been diagnosed with chronic osteomyelitis, type 2 diabetes, hypertension, disease of the esophagus, and acute kidney failure. Individually, each is sufficiently serious to warrant compassionate release.")

## E. A Sentence Reduction is Consistent with Consideration of the 18 U.S.C. § 3553(a) Factors

With full consideration of the § 3553(a) factors, including the COVID-19 pandemic, Mr. Walsh's time served constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing.

When extraordinary and compelling reasons are established, as they have been here, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case,

the Court should conclude that the time that Mr. Walsh has already served is sufficient to satisfy the purposes of sentencing.

Under § 3553, the Court must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The Presentence Report indicates that Mr. Walsh's crime was limited to exchange of images and video, and that he had no criminal history prior to this offense. Although child pornography crimes are always troubling, Mr. Walsh has served significant time on this offense, which has been sufficient to serve both punitive and deterrent functions of the sentencing goals. Mr. Walsh does not seek to justify, minimize, or deny the crime; but the fact that he had no criminal history is important in weighing the § 3553 factors. The Court has a lessened need to protect the public from Mr. Walsh in light of the fact that he can be monitored under Supervised Release, in terms of internet restrictions and sex offender registration requirements.

Moreover, the circumstances facing the Court today with the COVID-19 crisis provide justification to act decisively. Although Mr. Walsh's crime certainly deserved punishment, it does not rise to the level of a crime that would merit a death sentence. Leaving Mr. Walsh in FCI Elkton leaves him in great danger.

**CONCLUSION**

For the foregoing reasons, Mr. Walsh requests the Court reduce his sentence to time-served.

Respectfully submitted,

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.


  *s/ Myrlene R. Marsa*
        Myrlene R. Marsa
Assistant Federal Defender
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee  37402
Myrlene_Marsa@fd.org
(423) 756-4349
BPR# 016798